Littleton, Judge,
delivered the opinion of the court:
This suit arises under a contract which required plaintiff to furnish all labor and materials and perform all the work required for the construction and completion of an underground steam and hot-water distribution system in consideration of the payment by the defendant of $77,000. The invitation for bids required the submission of unit prices for the various items of work, to be used as a basis for making deductions from or additions to, the contract price provided any deviation from the drawings and specifications decreased or increased the amount of the work indicated and required therein. Plaintiff, whose bid was accepted, submitted unit prices for the various items of material and labor and included among such items “ Excavation (rock) $10 per cubic yard ” and “ Excavation (gravel or clay) $1.25 per cubic yard.”
Paragraph H-31 of the specification relating to rock excavation is set forth in finding I.
When plaintiff began excavating for the trenches it encountered loose rocks which were removed by a gasoline-power shovel, used in excavating trenches, or by pick and shovel, and it also encountered ledge rock which required blasting for removal. During the progress of the work a controversy arose, as a result of plaintiff’s claim that it should be paid $10 a cubic yard for all rock removed, whether in solid formation or consisting of loose rocks. The constructing quartermaster decided that the unit price of $10 applied only to rock that was of solid formation and, upon appeal by plaintiff, the Quartermaster General approved that interpre *751 tation with the statement that the unit price of $10 “ should apply only to rock in place which requires blasting for its removal or to boulders of one-half cubic yard or more in volume.”
The Quartermaster General’s decision of November 23,1981, addressed to the constructing quartermaster, was as follows: “ Your interpretation of the specifications that the quotation of the Crescent Plumbing & Heating Company, Inc., contractors for the underground steam and hot-water distribution system at Carlisle Barracks, which quotes a unit price of $10.00 per cubic yard for rock, should apply only to rock in place, which requires blasting for its removal or to boulders of one-half cubic yard or more in volume, is approved by this oflice.”
Plaintiff further protested the classification made, which protest was transmitted to the Quartermaster General and was accepted and treated as an appeal by the contractor under the contract, but the previous decision was affirmed and no change was made therein. In accordance with this interpretation of the contract, plaintiff was paid $10,403.60 for the excavation of 1,040.36 cubic yards of rock, at $10 a cubic yard. The amount paid covered the total yardage of ledge rock removed with the exception of 2.7 cubic yards and boulders of one-half cubic yard or more in volume, but it did not include 520 cubic yards of loose rocks and 180.92 cubic yards of the softer strata of the upper portions of the ledge rock which were removed with a power shovel in the same manner in which clay and gravel were removed.
Plaintiff contends that under the specification for rock excavation and the unit price submitted by it the defendant should have paid $10 a cubic yard for all rock, whether ledge rock or loose rocks six inches square or over, and that it is entitled to recover the excess amounts for which payment was not made. At the outset it should be noted that plaintiff’s bid was for the construction of a complete underground steam and hot-water distribution system, and that it was to be paid $77,000 for furnishing the material and carrying out the work, plus $10 a cubic yard for additional rock excavation. The unit prices, with the exception of the unit price for rock excavation, were not material in determining the total amount *752 to be paid by the defendant, except where there was some change in the plans which brought about an increase or a decrease in the contract price. One of the unit prices was $1.25 a cubic yard for ordinary excavation work, but no amount was paid for this work at the unit price other than as represented by the lump-sum price of $77,000. From this it seems apparent that when an additional amount was to be allowed and paid for excavation some unusual or extraordinary work was contemplated. In other words, a careful study of the contract, having in mind the project to be carried out, shows that the parties contemplated the installation of a heating system, including in the work to be done the excavating ordinarily required for such an undertaking. The work specified in the contract was in a section of the country where loose rocks of varying sizes would ordinarily be encountered, and we think it was not contemplated that any extra payment should be made for removing such rocks — that the terms of the contract and specifications contemplated only that plaintiff should be paid at the rate of $10 a cubic yard in the event it encountered rock of such character as to make the work of excavating more difficult and expensive than the excavation of material for which plaintiff claims extra compensation. Plaintiff’s theory requires that any rock encountered, even though removed by the power shovel in the ordinary way or removed by pick and shovel, should be classified as rock excavation to be paid for at the rate of $10 a cubic yard in excess of the lump-sum price for excavating for the trenches. It seems obvious that such a result was not intended by the parties, nor do we think a reasonable interpretation of the contract requires this construction. The specification provided that the price of $10 a cubic yard was not to be paid “ for excess rock excavation over that required by the dimensions of the trench at the point that rock is encountered.” And this, we think, confirms the view that the ordinary loose rocks removed in excavating in the ordinary way were not to be included in determining the extra payment at the rate of $10 a cubic yard. While it is true that loose rocks may be classified as “rock” in the broad generic meaning of the term, we think the contract did not use the term “ rock excavation ” in that sense and that it did not require a *753 separate classification therefor for which extra payment was to be made. We think the Quartermaster General’s interpretation of the contract was proper. The stated price of $77,000 for the project certainly contemplated excavating, and, were it not for the specification in question, all excavating, including rock in solid formation, would come within the description of work to be done in the construction and completion of the underground steam and hot-water distribution system. The ordinary excavating was included in and paid for in the contract price of $77,000. The unit price for such work was $1.25 a cubic yard, which was to be used in determining the amount to be paid for such work in the event of any deviation from the original plans. The price for rock excavation was eight times that amount and was to be paid for work encountered in preparing the trenches for the heating system. The number of cubic yards of excavation required for the construction of the system could readily be computed with a fair degree of accuracy, but the amount of solid rock, if any, or large boulders necessary to be removed could not be determined until after the earth, the soft rock, and the loose stones were removed. To provide for this situation and permit contractors to bid on the work without being subjected to the hazard of a guess on the excavation of rock' in solid formation, or rock of such size as to make the work of removal more difficult and expensive, the extra price of $10 a cubic yard for such rock excavation was obviously included. No such reason existed with respect to loose rocks which ordinarily could be and were, in this instance, removed by means of a power shovel, and we find no reason justifying the classification of excavation of loose rock at eight times the price to be paid for excavation work performed in the usual way. This conclusion is not a departure from the principle that parties are bound by contracts which they enter into. No change was here being made in the contract, a reasonable interpretation of which, we think, requires the conclusion reached, and accordingly makes necessary the denial of this item of the plaintiff’s claim with the exception of $27 for 2.7 cubic yards of ledge rock removed for which it was not paid. The facts show that plaintiff was paid $10,403.60, being $10 a cubic yard for the excavation of 1,040.36 cubic yards of *754 ledge rock, whereas it actually excavated 1,043.06 cubic yards of such rock. It is therefore entitled under the specific terms of the contract to recover $21 for 2.7 cubic yards of ledge rock at $10 a cubic yard.
The second item of the claim is that plaintiff should be paid $765.15 for the cost of insulating certain expansion joints.
The specifications provided that “ all pipes, fittings, and appurtenances that carry live steam, hot water, and drips shall be covered ”; that is, that they should be insulated. During the progress of the work a change was made in the contract, at the suggestion of the plaintiff, substituting a different type of expansion joint for that originally specified, and plaintiff contends that the substituted joints were not required to be insulated since insulation was not recommended by the manufacturer and that it was not required by the terms of the contract and the specifications. The expansion joints carried steam and hot water and, in our opinion, came within the items mentioned in the specifications set out as items to be insulated. Inasmuch as the contract unmistakably provided for this, the opinion and recommendation of the manufacturer who supplied the material, with respect to the installation and insulation, cannot govern. In these circumstances, this item of the claim must also be denied.
The final item relates to liquidated damages assessed and collected by the defendant. The contract provided that the work should be completed March 31,1932, whereas it was not completed until April 13, 1932, and the defendant accordingly asserted liquidated damages of $130 at the rate of $10 a day. Plaintiff contends that $70 of this amount was improperly assessed and should be repaid. We do not find anything in the contract or in the acts of the parties in carrying it out which would justify a remission of the penalty collected or any part thereof. This item of the claim must be denied.
Plaintiff is entitled to recover $27, and judgment will be entered accordingly. It is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.